**ORIGINAL**

FILED

APR 1 8 2017

U.S. COURT OF
FEDERAL CLAIMS

# In the United States Court of Federal Claims

No. 15-576C (Pro Se)
(Filed: April 18, 2017)

| | |
|---|---|
| CHRISTOPHER PORTER, ) | Keywords: Pro Se Complaint; Military Pay Act; Disability Retirement Pay; VA Benefits Estimate; Combat-Related Special Compensation. |
| Plaintiff, ) | |
| v. ) | |
| THE UNITED STATES OF AMERICA, ) | |
| Defendant. ) | |

*Christopher A. Porter*, Miramar, FL, Plaintiff *pro se*.

*Sonia M. Orfield*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, for Defendant. *Lt. Zachary Dembo*, Office of the Judge Advocate General, United States Navy, Washington, DC, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

In 2011, Plaintiff Christopher Porter was discharged from the United States Navy due to a combination of service-connected disabling conditions. In 2013, Mr. Porter asked the Board for Correction of Naval Records (BCNR) to correct his naval discharge records to reflect a diagnosis of post-traumatic stress disorder (PTSD) and to correct a reduction of his disability rating for a combat-related disability, which had been downgraded from 50% to 40%. The BCNR denied his requests.

In this action, Mr. Porter challenges the BCNR's decision, seeks compensatory damages for a series of wrongs he alleges were committed by the Navy, and requests payment of certain amounts of per diem to which he believes he was entitled but which he never received. The government has filed a partial motion to dismiss Mr. Porter's complaint and a motion for judgment on the administrative record.

For the reasons discussed below, the government's partial motion to dismiss is **GRANTED** as to most of Mr. Porter's claims, and its motion for judgment on the administrative record is **GRANTED** with respect to his remaining claims.

## BACKGROUND[1]

### I.     Mr. Porter's Naval Service, Injuries, and Treatment

Mr. Porter enlisted in the United States Navy in 2005. Admin. R. (AR) 187, Docket No. 13. In early 2008, Mr. Porter was injured on three occasions during trainings and war simulations. See id. at 271. First, in February 2008, he injured his right shoulder while climbing a ladder during a war simulation. Id. Next, in early March 2008, he hurt his right shoulder and lower back when he fell during a martial arts training session. Id. Finally, in early April 2008, Mr. Porter injured his back, right knee, and right ring finger during another war simulation when a large man knocked him to the ground and landed on his back. Id. During this same exercise, a simulated charge exploded near him. Id. at 196.

After he suffered these injuries, Mr. Porter was assigned to a duty station in San Diego, where he received treatment at a Navy medical center. See Compl. ¶¶ 4, 10, Docket No. 1. Over the next two years, Mr. Porter underwent several medical procedures to treat his injuries, including arthroscopic surgeries on his right shoulder and right knee and the insertion of a rod to stabilize his lumbar spine. See AR 188–94. Despite these interventions, Mr. Porter continued to suffer pain related to his injuries in his back and in both legs. See id.

### II.    Mr. Porter's Medical Evaluation and Proposed Ratings

In March 2010, a Navy medical evaluation board (MEB) determined that Mr. Porter's medical conditions might render him unfit for continued service and referred him to the joint VA/DOD Disability Evaluation System (VA DES) for a full assessment. See id. at 180. At the start of that process, on March 25, 2010, Mr. Porter submitted a claim to the VA DES. Id. at 181–83. In it, he claimed to have numerous "disabling conditions" beyond the injuries described above that he felt were "caused by, or aggravated by, [his] active military service." Id. at 182. In particular, he claimed to suffer from "post traumatic stress disorder due to IED." Id.

After he submitted his claim, VA doctors examined Mr. Porter on several occasions in April 2010. See id. at 197–201 (general medical exam); id. at 187–95 (physical exam focused on Mr. Porter's orthopedic injuries); id. at 186–87 (auditory exam); id. at 195–97 (evaluation for PTSD).

On February 26, 2011, the VA DES completed its evaluation. Id. at 4–31. It noted that its evaluation and recommendations would be used for two purposes. See id. at 4. First, the Navy would use the evaluation "in determining [Mr. Porter's] final disposition

---

[1] The facts set forth in this section are drawn from the allegations in Mr. Porter's complaint, which the Court assumes are true for purposes of deciding the government's motion to dismiss, as well as from the documents attached to the parties' filings and the administrative record submitted by the government.

for unfit conditions." Id. Second, the VA would use it "to determine [Mr. Porter's] potential entitlement to [VA] disability compensation." Id.

The VA DES then proposed disability ratings for Mr. Porter in two overlapping categories: (1) ratings related to the conditions that made him unfit for military service (i.e., "unfitting conditions"); and (2) ratings for conditions for which he might be entitled to VA disability compensation following his separation from the military (i.e., "disabilities"). See id. at 5–8. In terms of unfitting conditions, the VA DES proposed ratings of 20% for "residuals of lumbar L4–5 fusion"; 20% for "right lower extremity radiculopathy" (i.e., nerve pain in the right leg); and 10% for "left lower extremity radiculopathy" (i.e., nerve pain in the left leg). Id. at 5.

For purposes of VA disability compensation, the VA DES similarly proposed 20%/20%/10% ratings for the disabilities caused by Mr. Porter's lumbar fusion and ongoing pain in both legs. See id. In addition, it proposed ratings for thirteen other disabilities that Mr. Porter claimed. Id. at 5–8. It did not, however, propose a rating for PTSD. See id. Instead, it proposed a 10% rating for "adjustment disorder with mixed anxiety and depression (also claimed as post-traumatic stress disorder . . . )." Id. at 6.

## III.    The VA's Benefits Estimate

On the same day that the VA DES completed its evaluation, the VA provided Mr. Porter with a benefits estimate by letter. See id. at 170–78. The letter noted that the estimate set forth only "what disabilities VA is proposing for service connection, your estimated VA entitlement amount, and approximate VA payment start date." Id. at 170 (emphasis in original). Thus, it "d[id] not constitute a final decision by VA." Id.

In accordance with the VA DES's evaluation, the VA proposed a combined rating for the disabilities resulting from Mr. Porter's unfitting conditions of 50%. Id. at 170–71. Further, based on the combination of those disabilities and Mr. Porter's thirteen other claimed disabilities, the VA proposed a "total combined rating" of 90% for purposes of his entitlement to VA disability benefits. Id. at 173. The letter also informed Mr. Porter that "[u]nless we receive additional medical evidence, we will implement the proposed Rating Decision when the Service Department notifies us that you have separated." Id. at 178.

## IV.    The Navy Physical Evaluation Board's Findings

Soon thereafter, on March 4, 2011, a Navy physical evaluation board (PEB) issued findings regarding Mr. Porter's fitness for continued service. Id. at 32–33. Adopting the VA DES's recommendations, it found Mr. Porter unfit for continued service and recommended his "[p]ermanent [d]isability [r]etirement from [a]ctive [d]uty." Id. at 32. In accordance with the VA DES's evaluation, the PEB determined that Mr. Porter's unfitting conditions included "back pain, S/P L4–5 fusion"; "radicular leg pain, right"; and "radicular leg pain, left." Id. Applying a "[b]ilateral [f]actor" to his right and left radicular leg pain ratings, the PEB assigned him a combined disability rating of 50%.

Id. Further, it found that the disability was "permanent" and "incurred in the line of duty under conditions simulating war." Id.

On March 8, 2011, Mr. Porter formally received the PEB's findings, and on March 9, 2011, he underwent separation counseling. Id. at 35–36. During the counseling, he was informed that he had ten days in which to respond to the findings if he wished to request reconsideration or a formal PEB (i.e., a hearing). Id. at 35. Mr. Porter was warned that "[f]ailure to respond [within ten days] constitutes a presumption of acceptance and the case will be automatically finalized according to the current findings of the PEB." Id.

Mr. Porter responded to the findings on March 18, 2011. Id. at 37–40. In his response, he formally "accept[ed] and request[ed that] the PEB finalize [his] case." Id. at 37 (emphasis omitted). He also "waive[d] [his] right to submit new/additional information or to request a formal hearing." Id.

## V.   Mr. Porter's Claim for Combat-Related Special Compensation and Discharge from Active Duty

On April 7, 2011, Mr. Porter submitted a claim to the Navy for combat-related special compensation. Id. at 153–55. He apparently based his claim on the ratings found in the PEB's March 4, 2011 findings. Thus, he stated that the "Title of [his] Disability" was "50% PDRL/COMBAT RELATED." Id. at 154.

After submitting this claim, Mr. Porter was discharged from active duty and medically retired effective June 12, 2011. Id. at 42. Mr. Porter's DD-214 discharge form listed "Permanent Disability Retired List" as his "Type of Separation," and it stated that the "Narrative Reason For [his] Separation" was "Disability, Permanent." Id. The form also noted, in Box 18, that his disability "ha[d] been determined to be combat related." Id. (emphasis omitted).

On September 13, 2011, the Navy's Combat-Related Special Compensation Board (CRSC Board) approved Mr. Porter's request for combat-related special compensation. Id. at 51–54. The decision noted that he had received ratings for three combat-related disabilities: "Residuals of lumbar L4–5 fusion," rated 20%; "Right lower extremity radiculopathy," rated 20%; and "Left lower extremity radiculopathy," rated 10%. Id. at 51. Using the VA's combined ratings table (set forth at 38 C.F.R. § 4.25), the CRSC Board assigned him a combined CRSC rating of 40%. Id. at 53.

The CRSC Board noted, however, that Mr. Porter's "actual compensation amount w[ould] be determined by the Defense Finance and Accounting Service (DFAS)," which would "effect CRSC payment within 60 days." Id. Further, it stated that "[i]n some cases, where . . . disability retired pay is based on a relatively high percentage of disability and

the number of years of creditable service are relatively few, the computation [of CRSC compensation] may result in little or no CRSC compensation due."[2] Id.

## VI.    The VA's Final Disability Ratings

On March 31, 2012, the VA finalized its rating decision. Id. at 45–50. It made several changes to its February 26, 2011 estimated ratings. First, it reduced Mr. Porter's disability rating for one of his disabilities stemming from an unfitting condition, "residuals of lumbar L4–5 fusion," from 20% to 10%, effective November 18, 2011. Id. at 47, 50. Second, the VA changed his rating of 10% disability for "adjustment disorder with mixed anxiety and depression" to a rating of 50% for "post traumatic stress disorder (PTSD) and major depressive disorder," effective August 11, 2011. Id. at 45. Finally, it changed the ratings for two of Mr. Porter's other service-connected disabilities. Id. at 45, 47, 50 (increasing his rating for "obstructive sleep apnea" and reducing his rating for "cervical spine strain and degenerative disc changes with annular calcification between C4–7"). Based on these changes, the VA increased Mr. Porter's "combined evaluation for compensation" from 90% to 100%, effective June 13, 2011. Id. at 49–50.

## VII.   The CRSC Board's Changes to Mr. Porter's Combat-Related Special Compensation Rating

On May 30, 2012, the CRSC Board made two changes to Mr. Porter's combat-related special compensation rating. Id. at 69–73. First, effective July 2011, it corrected an error it made when it first awarded him a rating of 40% in September 2011. Id. at 69. According to the CRSC Board, Mr. Porter was entitled to an additional 10% disability rating due to the bilateral nature of two of his disabilities. Id. Thus, as of July 2011, Mr. Porter was entitled to a combat-related special compensation rating of 50%. Id. at 72.

Second, in accordance with the VA's November 18, 2011 reduction in Mr. Porter's disability rating for his "residuals from L4–5 fusion," the Navy reduced Mr. Porter's combat-related special compensation rating by 10% effective December 2011. Id. at 69. Accordingly, as of December 2011, Mr. Porter was again entitled to a combat-related special compensation rating of 40%. See id. at 72. The CRSC Board noted that it had informed DFAS of the changes "for their internal processing of [Mr. Porter's] CRSC" and that "[n]o further action [was] required on [Mr. Porter's] part to effect payment." Id.

In making these changes, however, the CRSC Board did not update Mr. Porter's list of claimed disabilities to reflect the VA's conversion of his "adjustment disorder" diagnosis to a diagnosis of "post-traumatic stress disorder." See id. at 70. Thus, as of May

---

[2] As discussed below in more detail, this is because 10 U.S.C. § 1413a(b)(3)(B) caps the amount of combat-related special compensation that may be paid to medically retired service members who served for less than twenty years.

2012, the CRSC Board had not considered whether Mr. Porter's PTSD diagnosis was combat related. See id.

## VIII.  Mr. Porter's Administrative Appeals and Requests for Reconsideration

On October 8, 2012, Mr. Porter sent a letter to his regional VA office appealing the VA's November 2011 reduction of his disability rating for his "residuals of lumbar L4–5 fusion." Id. at 151–52. The VA's response to this request does not appear to be included in the administrative record.

On January 24, 2013, he sent a similar letter to the CRSC Board requesting "Reconsideration/Appeal" of its decision to reduce his combat-related special compensation rating from 50% to 40% as of December 2011. Id. at 305–06. The CRSC Board responded to Mr. Porter's request on February 14, 2013. Id. at 74–78. Noting that it "is required to use the codes, percentages[,] and effective dates that the VA has rated," the CRSC board made no changes with respect to Mr. Porter's rating for "[r]esiduals of lumbar L4–5 fusion." See id. at 74.

Further, for the first time, the CRSC Board considered Mr. Porter's PTSD diagnosis. See id. at 75, 77. It determined that Mr. Porter's PTSD was not combat related, explaining that his "application package d[id] not establish that specific combat-related events caused [his] diagnosis." Id at 77. Accordingly, it made no changes to his rating for purposes of combat-related special compensation. See id. at 78.

## IX.  Mr. Porter's Application for the Correction of His Military Records

On August 21, 2013, Mr. Porter applied to the Navy for the correction of his military records. Id. at 102–25. He made two requests. First, he noted that his "PTSD disability was not submitted/recorded on [his] DD-214"—i.e., his military discharge form. Id. at 103 (emphasis omitted). He thus requested that the Navy correct his DD-214 to reflect his PTSD diagnosis. See id. Second, he asserted that his combat-related special compensation rating was "reduced by the U.S. Navy review board unjustly" from 50% to 40%. Id. (emphasis omitted).

After reviewing Mr. Porter's records, the BCNR denied Mr. Porter's application on November 3, 2014. AR 1–3. With respect to his combat-related special compensation claim, the BCNR stated that the reduction from 50% to 40% "was required because the VA lowered the rating for one of [his] orthopedic disabilities." Id. at 2. And "because CRSC entitlements are based on VA ratings," there was "no action" the BCNR could take to "restore [Mr. Porter's] entitlement to payment of CRSC at the 50% rate."[3] Id. The

---

[3] As discussed below in more detail, the actual amount of combat-related special compensation to which Mr. Porter was entitled did not, in fact, change when his rating was reduced from 50% to 40% because of the cap placed by 10 U.S.C. § 1413a(b)(3)(B). The BCNR apparently did not take this fact into account when it referenced "restor[ing]" Mr. Porter's entitlement to payments to the 50% rate.

BCNR did not mention or appear to review the CRSC Board's determination that Mr. Porter's PTSD was not combat related. See id. at 1–3.

Turning to Mr. Porter's claim regarding the correction of his military records to include a diagnosis of PTSD on his discharge form, the BCNR concluded that Mr. Porter failed to timely bring that issue to the PEB's attention. See id. at 2. According to the BCNR, "if [Mr. Porter] believed [he] w[as] suffering from a ratable mental disorder, [he] should have requested the PEB to rate that condition, and demanded a formal hearing." Id. Further, "[t]he fact that the VA ultimately granted [him] a disability rating for post[-]traumatic stress disorder was not considered probative of the existence of error or injustice in [his] naval record because the VA acted without regard to the issue of [his] fitness for service vis-à-vis the effects of that disorder at the time of [his] release from active duty and retirement." Id. Accordingly, because neither of his claims merited correcting his naval records, the BCNR denied Mr. Porter's application. Id. at 3.

## X.    This Action

### A.    Mr. Porter's Complaint

Mr. Porter filed a complaint in this Court on June 8, 2015. Docket No. 1. In it, he asserted several claims against the Navy. First, he alleged that the Navy "fraudulently, deliberately, or mistakenly reduce[d]" his combat-related special compensation rating from 50% to 40%. Compl. ¶ 41. He also alleged that the Navy "fraudulently, deliberately, or mistakenly failed to inscribe or enter on [his] DD-214 the [p]ost-traumatic stress disorder (PTSD) diagnosis that was in the medical records from the onset." Id. ¶ 40 (emphasis omitted). Further, he alleged that he was "entitl[ed] to [a] Per Diem as Per 'JFTR PAR U4400'" for the period of time when he was billeted in San Diego while receiving medical treatment. Id. ¶ 6 (emphasis omitted); see also id. ¶ 22. He also appeared to claim that he was entitled to reimbursement for certain expenses related to moving his family from California to Florida upon his discharge. See id. ¶ 13.

Finally, Mr. Porter alleged that he had been "treated by agents of the defendant in [a manner that was] discriminatory, unfair, [and a] widespread abuse of their authority," id. ¶ 7 (quotation omitted); that he was "subjected to lies, deception, stalling, intimidation, threats, harassment and oppressive tactics by members of the United States [Navy] and its hierarchy," id. ¶ 12; that the Navy "intentionally made false representations of the material facts regarding the true nature of [his] claim," id. ¶ 25; and that the Navy's representations regarding his claim were "mistaken when they were made" and the Navy "knew, or should have known, that its representations were mistaken when they were made or it made them recklessly," id. ¶¶ 33–34.

According to Mr. Porter, these alleged misdeeds "caused [him] . . . to suffer substantial damages for pecuniary losses, additional mental anguish, loss of enjoyment in life, and other non-pecuniary losses." Id. ¶ 42. He requested an award of "compensatory damages in an amount of $61,000.00 and more to be determined by th[e] court." Id. at 5.

## B.   Remand to the BCNR

After compiling an administrative record, the government moved to partially dismiss Mr. Porter's complaint with respect to several of his claims and moved for judgment on the administrative record with respect to his remaining claims. See Def.'s Partial Mot. to Dismiss and Mot. for J. on the Admin. R. (Def.'s Mot.), Docket No. 14. Upon the completion of briefing, the Court ordered the parties to submit supplemental briefs regarding whether it should remand the case to the BCNR for further consideration. Docket No. 20. After the Court received the parties' responses, it remanded the case to the BCNR. Docket No. 23. The Court instructed the BCNR to take the following actions:

(1) Review (for the first time) the merits of the [CRSC] Board's determination that [Mr. Porter's] claimed post-traumatic stress disorder (PTSD) was not combat related;

(2) Obtain an advisory opinion from the Director of Compensation, Office of the Deputy Under Secretary of Defense (Military Personnel Policy) (ODUSD/MPP), pursuant to Department of Defense Directive 1332.41, regarding all of [Mr. Porter's] claims for entitlement to combat-related special compensation (including his PTSD-related claims);

(3) Obtain an advisory opinion from the Defense Finance and Accounting Service (DFAS) to provide an accounting of [Mr. Porter's] current entitlement benefit and projected entitlement benefit, should his ratings or disabilities be increased;

(4) Review (for the first time) [Mr. Porter's] per diem and travel expense claims; and

(5) Upon completing its review of the entire case, and taking the advisory opinions into consideration, issue a final decision granting [Mr. Porter] any relief it determines that he is entitled to receive, and to explain in detail the rationale supporting its final decision.

Id. at 1–2.

## C.   The BCNR's Decision on Remand

The BCNR completed its review and issued a remand decision on October 11, 2016. See Notice of Filing of Decision on Remand (Remand Decision) at 3–4, Docket No. 27. The BCNR reported that it had received advisory opinions regarding Mr. Porter's claims from the Office of the Chief of Naval Operations (OCNO), the ODUSD/MPP, the Navy Council of Review Boards (Navy CORB), and DFAS. Id. It also noted that Mr. Porter did not submit any additional documents or materials for consideration. Id. at 3.

Based on the advisory opinions and its own review, the BCNR "concluded that [Mr. Porter's] PTSD condition did not qualify for CRSC" because "there was no evidence presented that showed that [Mr. Porter's PTSD] was caused by simulated combat training." Id. at 4. Further, it observed that, according to the advisory opinions it obtained from the Navy CORB and DFAS, Mr. Porter's combat-related special compensation payments were capped at their current level. Id.; see also id. at 10–11. That is, based on his rank and years of service, Mr. Porter would not be eligible to receive any more combat-related special compensation than he currently receives even if the VA increased his disability ratings for combat-related disabling conditions from 40% to 100%. See id. at 10–11. The BCNR thus concluded that Mr. Porter's "PTSD condition" did not "qualif[y] for CRSC." See id. at 4.

The BCNR further concluded that Mr. Porter was not "authorized per diem in accordance with the Joint Federal Travel Regulation[s]" because he had "presented no evidence to the Board to explain why [he was] entitled to per diem for travel of [his] dependents or more than the Governmental Meal Rate while [he was] assigned to San Diego." Id. Accordingly, it denied his per diem claims. See id.

After the BCNR filed its remand decision, the parties filed supplemental briefs. See Docket Nos. 32–33. In its supplemental brief, the government renewed and expanded its motion to dismiss, contending that Mr. Porter's entire complaint should be dismissed for lack of subject matter jurisdiction and/or failure to state a claim. See Def.'s Suppl. Br. Addressing the [BCNR]'s Final Decision and Renewing Its Mot. to Dismiss and, in the Alternative, for J. on the Admin. R. at 2–4.

## DISCUSSION

### I.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### A.    Applicable Standards

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). It is well established that complaints that are filed by pro se plaintiffs, like this one, are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the court that jurisdictional requirements have been met. Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004).

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)

9

(2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Further, in an action under 28 U.S.C. § 1491(a), the Court of Federal Claims lacks the power to grant equitable relief unless such relief is "an incident of and collateral to" a money judgment. James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting 28 U.S.C. § 1491(a)(2)). Thus, the court's power to order the correction of a service member's military records depends upon the correction being "incidental" to an award of monetary relief, usually in the form of increased payments. See Pearl v. United States, 111 Fed. Cl. 301, 308 (2013); Haskins v. United States, 51 Fed. Cl. 818, 822 (2002); see also 28 U.S.C. § 1491(a)(2) ("To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records . . . .").

### B. Challenge to BCNR Decisions Regarding PTSD and Combat-Related Special Compensation

In this case, Mr. Porter has failed to meet the burden of establishing this Court's jurisdiction over his claims that the BCNR erred when it failed to correct his military records to reflect his PTSD diagnosis and when it declined to increase the rating for his acknowledged combat-related disabilities from 40% to 50%. To be sure, 10 U.S.C § 1201, which governs military disability retirement, is a money-mandating statute. See Fisher, 402 F.3d at 1174 (citing Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991)). Likewise, 10 U.S.C. § 1413a, which provides that "[t]he Secretary concerned shall pay to each eligible combat-related disabled uniformed services retiree who elects benefits under this section a monthly amount for the combat-related disability of the retiree," is money-mandating. Adams v. United States, 126 Fed. Cl. 645, 655–56 (2016).

But Mr. Porter does not appear to request monetary relief based on his claim that the BCNR erred when it denied his request for correction of his records. And even if he had, such relief would not be available on the facts of this case because Mr. Porter's disability retirement and combat-related special compensation payments are capped at their current levels. See Remand Decision at 10 (Navy CORB advisory opinion stating that Mr. Porter "is receiving the maximum amount of CRSC pay that he can receive"); id. at 11 (DFAS analysis explaining that "if [Mr. Porter's] P[ermanent] D[isability] R[etired] L[ist] PEB percent increased to 100%, his CRSC pay would remain at $226.00 and his net retired pay would remain at $0.00," and that "if his CRSC percent increased to 100%, his CRSC pay would remain at $226.00 since he is capped").

The cap on Mr. Porter's retirement payments results from the operation of two sets of laws. First, under 38 U.S.C. § 5304 and 38 C.F.R. § 3.750, a veteran who is eligible for both military retirement pay and disability compensation must generally

waive his military retired pay in order to receive disability compensation. See 38 U.S.C. § 5304(a)(1); 38 C.F.R. § 3.750(c)(1). Veterans who stand to receive more in disability compensation than in retirement pay have reason to execute such a waiver.

To determine whether a service member who has been medically retired will receive more in disability compensation than in retirement pay, the service member's entitlement to retirement pay must be calculated pursuant to 10 U.S.C. § 1401(a) and 10 U.S.C. § 1406(b)(1). Those statutes act in concert with 10 U.S.C. § 1201 to place a cap on the retirement pay that a medically retired service member may receive. Specifically, a service member who is medically retired may receive no more than a payment equal to his monthly basic payment at the time of retirement multiplied by either (1) two-and-a-half times his creditable years of service, expressed as a percentage,[4] or (2) the percentage of his unfitting disabilities up to 75%. See 10 U.S.C. § 1401(a); 10 U.S.C. § 1406(b)(1).

In this case, according to DFAS's advisory opinion, Mr. Porter's entitlement to retired pay based on his present level of disability is $1,140 per month. Remand Decision at 11. But his monthly entitlement to VA disability benefits is much higher—$3,371.35 per month. Id. He has thus executed a VA waiver, and he receives no net retirement pay. See id.

According to DFAS, if Mr. Porter's entitlement to retirement pay were calculated based on a 100% disability rating (rather than the current 40% rating), he would be entitled to just $1,710 in retirement pay per month. See id. This remains well short of his VA waiver amount, and he still would receive no net retirement pay. See id.

The cap on Mr. Porter's combat-related special compensation payments has a separate source, 10 U.S.C. § 1413a, which is the statute creating the entitlement to combat-related special compensation. Under that statute, combat-related special compensation is not subject to a VA waiver, and a disabled service member is generally entitled to a payment of "the amount of compensation to which the retiree is entitled under title 38 [i.e., the statute governing disability benefits] for that month, determined without regard to any disability of the retiree that is not a combat-related disability." Id. § 1413a(b)(1). For service members with fewer than twenty years of service who are medically retired, however, the statute caps payments at an amount equal to two-and-a-half times the service member's creditable years of service, expressed as a percentage, multiplied by the member's base pay upon retirement. Id. § 1413a(b)(3)(B).

As discussed above, Mr. Porter served in the Navy for about five years. Thus, the applicable multiplier under § 1413a(b)(3)(B) is fairly small, and, according to DFAS, the § 1413a(b)(3)(B) calculation yields a maximum monthly payment for Mr. Porter of $226.00, which is the amount he currently receives. See Remand Decision at 11. His combat-related special compensation payments therefore would not change even if his

---

[4] Thus, a service member with ten years of creditable service could elect a multiplier of 25%. See 10 U.S.C. § 1401.

combat-related disabilities were rated as 100% disabling by the VA. See id.; see also id. at 10 (Navy CORB advisory opinion reaching the same conclusion).

Under the relevant statutes and regulations, then, Mr. Porter cannot receive any retirement pay without revoking his VA waiver; nor can he receive any more combat-related special compensation than he currently receives. As a result, this Court lacks jurisdiction to order the correction of his military records, even if such a correction were warranted, because such relief would not be "an incident of and collateral to" a money judgment. Caldera, 159 F.3d at 580 (quoting 28 U.S.C. § 1491(a)(2)); see also Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992) (Court of Federal Claims may exercise its equitable powers only "if they are necessary for complete relief"); Pearl, 111 Fed. Cl. at 308; Haskins, 51 Fed. Cl. at 823. Accordingly, the Court lacks jurisdiction over Mr. Porter's claim that the BCNR erred when it failed to correct his military records to reflect his PTSD diagnosis and declined to increase the rating for his acknowledged combat-related disabilities from 40% to 50%.[5]

### C.      Tort and Civil Rights Claims

As to Mr. Porter's other claims: it is well established that "[t]he plain language of the Tucker Act excludes from the Court of Federal Claims['] jurisdiction claims sounding in tort." Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (citing 28 U.S.C. § 1491(a)(1)). Similarly, this Court lacks jurisdiction over claims alleging the deprivation of civil rights and/or claims based on alleged violations of civil rights laws, for which jurisdiction is vested in the United States District Courts. See Elkins v. United States, 229 Ct. Cl. 607, 608 (1981) (per curiam); Taylor v. United States, 73 Fed. Cl. 532, 540 (2006); Sindram v. United States, 67 Fed. Cl. 788, 794 (2005). Thus, the Court lacks jurisdiction over Mr. Porter's claims for damages arising from what he characterizes as "false representations"; "mistaken representations"; "mental anguish, loss of enjoyment in life, and other non-pecuniary issues"; and his claims based on the Navy's allegedly discriminatory or oppressive conduct. See Compl. ¶¶ 7, 12, 25–29, 33–37, 39–43.

### D.      Claims Under the Joint Travel Regulations

On the other hand, to the extent that Mr. Porter is pressing claims for monetary relief based on violations of the Joint Federal Travel Regulations, this Court has

---

[5] Further, as the government points out, the Court lacks jurisdiction to entertain claims directly challenging the VA's disability benefits decisions. Prestidge v. United States, 611 F. App'x 979, 982–83 (Fed. Cir. 2015); Addington v. United States, 94 Fed. Cl. 779, 782 (2010); see also Elkins v. Gober, 229 F.3d 1369, 1374–75 (Fed. Cir. 2000) (discussing the administrative scheme governing such challenges). Thus, to the extent Mr. Porter's combat-related special compensation claim may be construed as a challenge to the VA ratings that form the starting point for calculating his entitlement to combat-related special compensation, the Court lacks jurisdiction over the claim for that reason as well.

jurisdiction over such claims under the Tucker Act. See Bailey v. United States, 52 Fed. Cl. 105, 109 (2002); Eastman v. United States, 33 Fed. Cl. 293, 297–98 (1995). Accordingly, the Court has jurisdiction to hear Mr. Porter's claims that the BCNR erred when it found that he was not entitled to additional per diem payments.

*   *   *   *   *   *   *   *   *   *   *

In summary, the Court lacks jurisdiction as to Mr. Porter's claim that his records should be corrected to reflect his PTSD diagnosis and his claim that the Board erred in not adjusting upward by 10% his rating for his combat-related disabilities. On the facts of his case, Mr. Porter is not entitled to monetary relief on those claims; and the Court thus has no power to grant the equitable relief he requests. Further, the Court lacks jurisdiction over Mr. Porter's tort, discrimination, and civil rights claims, as well as his challenge to the VA's reduction of his disability ratings. The government's motion to dismiss for lack of subject-matter jurisdiction is therefore **GRANTED** as to all of those claims.

## II.   Motion to Dismiss or in the Alternative for Judgment on the Administrative Record as to Per Diem Claims

### A.   Standards

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC), the court accepts as true the complaint's undisputed factual allegations and construes them in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[6] The court also draws all reasonable inferences in favor of the non-moving party. Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001). Nevertheless, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In other words, the plaintiff's claim must be plausible on its face. Id. at 570; see also Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

The standard governing a motion for judgment on the administrative record is set forth in RCFC 52.1, and differs from the standard for a motion for summary judgment. Bannum, Inc. v. United States, 404 F.3d 1346, 1354–55 (Fed. Cir. 2005). Thus, when deciding a motion for judgment on the administrative record, "a genuine dispute of material fact does not preclude a judgment on the administrative record." Sierra Nev.

---

[6] Because "[t]he Rules of the United States Court of Federal Claims generally mirror the Federal Rules of Civil Procedure (FRCP)," the "'[i]nterpretation of the court's rules [is] guided by case law'" interpreting the equivalent rules of federal procedure and by "'the Advisory Committee notes that accompany the Federal Rules.'" Sharpe v. United States, 112 Fed. Cl. 468, 474 n.3 (2013) (quoting RCFC 2002 Rules Committee Note).

Corp. v. United States, 107 Fed. Cl. 735, 751 (2012) (citing Bannum, Inc., 404 F.3d at 1355–56). To the contrary, "[t]o review a motion or cross-motions under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 630 (2014) (citing Bannum, Inc., 404 F.3d at 1356–57); see also RCFC 52.1 Rules Committee Note (2006) ("Summary judgment standards are not pertinent to judicial review upon an administrative record."). "The existence of a question of fact thus neither precludes the granting of a motion for judgment on the administrative record nor requires th[e] court to conduct a full blown evidentiary proceeding." CRAssociates, Inc. v. United States, 102 Fed. Cl. 698, 710 (2011) (citing Bannum, Inc., 404 F.3d at 1356).

### B.   Scope of Review of BCNR Decisions

The scope of judicial review of military correction board decisions is a narrow one. Thus, this Court is "'limited to determining whether a decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.'" Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). The arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig, 719 F.2d at 1157 (emphasis in original). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court is limited to reviewing the record that was before the corrections board. Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006); see also Walls v. United States, 582 F.3d 1358, 1368 (Fed. Cir. 2009). Finally, the court may not "substitute [its] judgment for that of the military department[] when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156.

### C.   Application to This Case

As noted above, the government has moved to dismiss Mr. Porter's claims regarding his entitlement to additional amounts of per diem pursuant to RCFC 12(b)(6), for failure to state a claim. Alternatively, it asks that the Court enter judgment on the administrative record as to those claims.

The Court agrees with the government that the allegations in Mr. Porter's original complaint were arguably too vague and generalized to state a claim for relief. Thus, in that complaint, Mr. Porter simply alleged that "Plaintiff was entitl[ed] to Per Diem as per 'JFTR PAR U4400' which delineates the rights to County Per Diem when TDY is not at the installation." Compl. ¶ 6 (emphasis omitted); see also id. ¶¶ 22, 39 (making similar generalized allegations). He also stated, in reference to his apparent claim for reimbursement for travel expenses for his dependents, that he "was []paid less money than what he was entitle[d] to as [a] retired Navy member and his dependents (wife and two children travelling from California to Florida) of the United States." Id. ¶ 13. Mr.

Porter did not include any factual allegations in support of his claim that he was entitled to additional per diem payments; nor did he cite any specific regulations as a basis for his entitlement to travel expenses for his family.

On the other hand, Mr. Porter appended some email exchanges regarding reimbursement of travel expenses to his complaint, id. at 9–23; and he elaborated somewhat further on his allegations in his response to the government's motion to dismiss, see Pl.'s Mot. to Dismiss Def.'s Mot. at 10, Docket No. 16. Thus, in his response, he contended that the joint federal travel regulations (JFTR) entitle service members to per diem payments for meals when they are ordered to annual training where a government mess is "unavailable." Id. He further claimed that under the applicable regulation, a government mess "is considered not available if (1) the member's orders specifically state that government mess is not available, and (2) the unique circumstances of the member's duty and assignments prevent him from taking any meals at government mess facilities located at the nominal site of his assignment." See id.

According to Mr. Porter, the circumstances of his stay in San Diego for treatment at the Medical Center were such that "MESSING was NOT COMPATIBLE" because his appointments "were at various time[s] of the day and . . . were MORE THAN 99.9% OFF THE BASE," and because of "intricacies, complexities, and . . . Base Galley hours of operations." Id. (emphasis in original).

Given Mr. Porter's pro se status, and the unclear state of the record regarding his claims for per diem pay, the Court directed the BCNR to develop the record and resolve Mr. Porter's per diem claims when it remanded this case to the BCNR. Based on the BCNR's decision, the Court concludes that, even assuming that Mr. Porter has stated claims for relief within the meaning of RCFC 12(b)(6), the government is entitled to judgment on the administrative record as to those claims.

Thus, in an advisory opinion the BCNR obtained on remand, OCNO explained that, under Navy regulations, a service member "is not authorized dependent travel and transportation allowances when a member is called to active duty (for other than training) for more than 180 days at one location" unless the call to duty was required by contingency operations. Remand Decision at 5. The BCNR noted, however, that Mr. Porter "presented no evidence to the Board to explain why [he was] entitled to per diem for travel of [his] dependents" in connection with his assignment to San Diego. Id. at 4.

Further, OCNO advised the BCNR that Mr. Porter's per diem for meals was limited to the standard Government Meal Rate (GMR) because "adequate Government Quarters [we]re available on the U.S. Installation to which [he was] assigned" and "the Government dining facility/mess was available for all three meals" each day he was assigned there. Id. at 5–6. Relying on OCNO's opinion, the BCNR determined that Mr. Porter was not authorized any per diem for meals beyond the per diem he in fact received. Id. at 4.

In his supplemental brief, Mr. Porter does not present any basis for challenging the BCNR's determination, other than to assert that he had many medical appointments

off base during the time he was an outpatient at the San Diego Medical Center and that "[g]alley hours weren't compatible with the appointments." See Pl.['s] Suppl. Brief[] at 2, Docket No. 33. But the pertinent regulations provide that a service member is entitled to reimbursement for meals only when an officer has determined (among other things) that "[t]here is excessive distance between the [government] dining facility and places of duty, and/or of lodging"; that "[t]ransportation is not reasonably available between the [government] dining facility and places of duty, and/or of lodging"; or "[d]uty hours and [government] dining facility operating hours are not compatible." See Dep't of Def., The Joint Travel Regulations Ch. 4, Part B ¶ 4235(B) (Nov. 1, 2016), http://www.defense travel.dod.mil/Docs/perdiem/JTR.pdf. It was not unreasonable for the Board to find that Mr. Porter did not submit evidence sufficient to show that any of these standards were met.

Accordingly, Mr. Porter's claims for additional per diem payments lack merit, and the government is entitled to judgment on the administrative record as to those claims.

## CONCLUSION

For the reasons discussed above, the government's motion to dismiss under RCFC 12(b)(1) is **GRANTED** as to Mr. Porter's claim that his records should be corrected to reflect his PTSD diagnosis; his claim to an entitlement to a change in his combat-related special compensation rating; his tort, discrimination, and civil rights claims; and any claim that the VA erred in revising his disability ratings. Accordingly, those claims are **DISMISSED** without prejudice.

The government's motion to dismiss Mr. Porter's remaining claim under RCFC 12(b)(6) is **DENIED**; however, its motion for judgment on the administrative record as to Mr. Porter's per diem claims is **GRANTED**.

The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Judge